**Paul L. CONTRERAS and Arnoldus Janssen, Plaintiffs–Appellants,**

v.

**UNITED STATES, Defendant–Appellee.**

**No. 99–1311.**

United States Court of Appeals, Federal Circuit.

June 12, 2000.

Kurt T. Rumsfeld, Mulholland & Hickey, of Washington, DC, argued for plaintiffs-appellants. With him on the brief were Gregory K. McGillivary, and Thomas A. Woodley.

Thomas A. Coulter, Trial Attorney, Commercial Litigation Branch, Civil Division, Department of Justice, of Washington, DC, argued for defendant-appellee. With him on the brief were David W. Ogden, Acting Assistant Attorney General; David M. Cohen, Director; and Anthony H. Anikeeff, Assistant Director. Of counsel on the brief was Jeffrey A. Epstein, Senior Assistant Counsel, Human Resources Operation, Department of the Navy, of Washington, DC.

Before CLEVENGER, SCHALL, and BRYSON, Circuit Judges.

BRYSON, Circuit Judge.

This case concerns the amount of annual leave accrued each pay period by certain federal civil servants who work more than a standard eight-hour shift and more than a standard 40–hour workweek. The plaintiffs contend that they are entitled to accrue leave based on the length of their workday, contrary to regulations promulgated by the Office of Personnel Management (OPM). The district court disagreed and upheld the accrual scheme set forth in OPM's regulations. We affirm.

## I

The Annual and Sick Leave Act of 1951, as amended, 5 U.S.C. §§ 6301–6387, defines the rate of accrual of annual leave for federal civil service employees by granting a certain portion of a "day" of annual leave for each "full biweekly pay period" worked by the employee. The statute that governs annual leave accrual for most employees provides as follows:

An employee is entitled to annual leave with pay which accrues as follows—

(1) one-half day for each full biweekly pay period for an employee with less than 3 years of service;

(2) three-fourths day for each full biweekly pay period, except that the accrual for the last full biweekly pay period in the year is one and one-fourth days, for an employee with 3 but less than 15 years of service; and

(3) one day for each full biweekly pay period for an employee with 15 or more years of service.

5 U.S.C. § 6303(a). Under this scheme, the typical civil service employee who works eight hours a day, five days a week, earns four, six, or eight hours of annual leave for every two weeks of work, depending on the employee's tenure.

That scheme works fine for employees on a regular schedule of 10 days of eight hours during each two-week pay period. The scheme falters, however, for employees who work abnormal schedules: section 6303(a) does not clearly set forth what constitutes a "day" for those employees.

For part-time employees and employees on flexible and compressed schedules, Congress has recognized and addressed that problem. In 1982, Congress amended the Annual and Sick Leave Act to define the term "day," as applied to employees on flexible or compressed schedules, to be eight hours. See 5 U.S.C. § 6129. As a result, employees who work, for example, four 10–hour shifts per week accrue the same number of hours of annual leave in each biweekly pay period as employees who work five eight-hour shifts per week. For part-time employees, Congress enacted a separate statute providing that employees working less than 40–hour weeks shall accrue annual leave "on a pro rata basis." 5 U.S.C. § 6302(c). Thus, an employee who works 20 hours per week accrues half of the annual leave earned by a full-time employee, i.e., two, three, or four hours per biweekly pay period, depending on the employee's tenure.

While Congress made special provision for those two groups of employees who work atypical schedules, it has not made special provision for a third class of such employees — employees who work what OPM refers to as "uncommon tours of duty." See 5 C.F.R. § 630.201. Employees who work uncommon tours of duty are employees, such as the plaintiffs in this case, who have authorized and established tours of duty that exceed 80 hours of work in a biweekly pay period. By regulation, OPM has authorized executive branch agencies to provide that any employee working an uncommon tour of duty will accrue annual leave on the basis of that uncommon tour of duty. OPM's regulation provides:

The leave accrual rates for [employees with uncommon tours of duty] shall be directly proportional (based on the number of hours in the biweekly tour of duty and the accrual rate of the corresponding leave category) to the standard leave accrual rates for employees who accrue and use leave on the basis of an 80–hour biweekly tour of duty.

5 C.F.R. § 630.210(a).

## II

The plaintiffs in this case are civilian employees of the Department of Defense who work as firefighters at Naval Station Treasure Island in California. Like other firefighters at that naval station, the plaintiffs work a tour of duty that consists of three shifts of 24 hours per week. Those 24–hour shifts include sleep periods, meal

periods, and personal time while the firefighters are on standby status. The plaintiffs' six shifts of 24 hours every two weeks result in a biweekly pay period consisting of 144 hours of compensable worktime.

The Department of Defense classified the plaintiffs and the other firefighters at Naval Station Treasure Island as employees with uncommon tours of duty. Pursuant to 5 C.F.R. § 630.210(a), OPM's regulation governing leave accrual for employees with uncommon tours of duty, the firefighters accrue annual leave time at the same rate per hour worked as typical civil servants, but because they work nearly twice as many hours per pay period as typical civil servants, they accrue nearly twice as much annual leave per pay period as employees who work 40-hour weeks. Because the firefighters at Naval Station Treasure Island work 144 hours per biweekly pay period, the formula prescribed by the OPM "uncommon tours of duty" regulation results in annual leave accrual of 14.4 hours per pay period for firefighters with more than 15 years tenure, 11.1 hours per pay period for firefighters with three to 15 years tenure, and 7.2 hours per pay period for firefighters with less than three years tenure.

Although OPM's formula provides that employees with uncommon tours of duty accrue more hours of annual leave per pay period than other civil servants, the plaintiffs take the position that OPM's formula is not as favorable to them as it should be, and that they are entitled to accrue even more leave time each pay period. Based on that theory, the plaintiffs filed suit against the United States in the United States District Court for the Northern District of California. They sought damages and other relief, including an order requiring that they be granted annual leave based on their 24-hour workday, rather than the proportional rate specified by OPM regulation.

In the district court, the plaintiffs argued that the general annual leave provision of the Annual and Sick Leave Act, 5 U.S.C. § 6303(a), requires that their annual leave be calculated on the basis of the number of hours in their workday, not on the number of hours in their biweekly pay period. Specifically, they argued that the word "day" in section 6303(a) must be interpreted to mean the "workday" of each affected employee. Because firefighters at Naval Station Treasure Island work 24-hour shifts, the plaintiffs argued that they and the other similarly situated firefighters are entitled to accrue annual leave equaling one-half, three-fourths, or one workday per pay period, i.e., 12, 18, or 24 hours of annual leave per pay period, depending on tenure, rather than the 7.2, 11.1, and 14.4 hours of annual leave per pay period that they now receive.

On cross-motions for summary judgment, the district court granted summary judgment for the government. The court held that the word "day" in 5 U.S.C. § 6303(a) is ambiguous as applied to employees with uncommon tours of duty and that OPM's application of the leave accrual statute to such employees in its "uncommon tour of duty" regulation is reasonable. The court therefore upheld the proportional accrual scheme employed by the regulation, under which employees who work an uncommon tour of duty accrue annual leave at the same rate per hour worked as do ordinary civil servants.

### III

On appeal to this court, the plaintiffs renew their statutory argument that firefighters working regularly scheduled 24-hour shifts should accrue 12, 18, or 24 hours of annual leave each biweekly pay period because section 6303(a) grants employees one-half day, three-fourths day, and one day of leave for each pay period, depending on tenure, and the firefighters' working "day" is 24 hours long. We reject the plaintiffs' theory that the term "day" in section 6303(a) refers to the shift or "workday" of each affected employee, and that each employee's annual leave accrual per pay period therefore depends on the num-

ber of hours in that employee's shift or workday. The language of section 6303(a) does not require that result, and both the legislative history of the Annual and Sick Leave Act and the policies underlying the Act support a contrary conclusion.

### A

■ As a threshold matter, the parties agree that the plaintiffs are "employees" within the meaning of the Annual and Sick Leave Act and that Congress intended employees such as the plaintiffs to receive annual leave under the Act. Section 202(a) of the Act stated that the Act "appl[ies] to all civilian officers and employees of the United States" except specifically listed categories of personnel not relevant to this appeal. Annual and Sick Leave Act of 1951, ch. 631, § 202(a), 65 Stat. 672, 679. When Congress enacted title 5 of the United States Code to codify the laws dealing with government employees, it codified section 202(a) of the Act at 5 U.S.C. § 6301(2) without substantive change. *See* Act of Sept. 6, 1966, Pub.L. No. 89–554, §§ 1, 7(a), 7(b), 8(a), 80 Stat. 378, 517, 631–32, 656. Section 6301(2) of title 5 defines the term "employee" to mean "an employee as defined by section 2105 [of title 5]," which in turn defines the term "employee" to include "an individual who is ... appointed in the civil service by ... a member of a uniformed service," 5 U.S.C. § 2105(a)(1)(C). As civilian employees of the military, the plaintiffs are employees pursuant to section 2105, and they are therefore clearly entitled to annual leave under the Act. The more difficult question is what rate of annual leave accrual applies to them.

### B

With respect to both part-time employees and employees on compressed or flexible schedules, Congress made clear that it intended for the amount of annual leave to be proportional to the number of hours an employee works in the course of a biweekly pay period, not to the number of hours in the employee's work shift. While it is true that Congress enacted separate statutes to deal with part-time employees and employees on flexible or compressed schedules, those statutes reflect a consistent expression of congressional intent to have annual leave accrue according to the number of hours an employee works during a standard pay period, not according to the way those hours are allocated to the employee's shifts during the pay period.

If the plaintiffs' construction of section 6303(a) were adopted, it would lead to absurd results that Congress could not possibly have intended. For example, under the plaintiffs' construction of section 6303(a), employees who worked the same number of hours as the plaintiffs, but did so by working more shifts of shorter duration, would accrue less annual leave than the plaintiffs even though they worked just as many hours per pay period as the plaintiffs in precisely the same job. Thus, under the plaintiffs' theory, if some of the firefighters at Naval Station Treasure Island worked four shifts of 18 hours each week, they would accrue less annual leave than the plaintiffs and others who worked three shifts of 24 hours, even though both groups would be working the same total of 144 hours per pay period.

Another anomaly would result from adopting the plaintiffs' theory: if some of the plaintiffs' co-workers worked only two shifts of 24 hours per week rather than three 24–hour shifts, they would earn as much annual leave as the plaintiffs, even though they would be working one-third fewer hours. By the same token, an employee with an uncommon tour of duty who worked only six hours per day but worked all seven days of the week would earn less annual leave than an ordinary civil servant, even though the six-hour-a-day employee would be working more hours per week.

Finally, the plaintiffs' construction of the statute would not work at all if the employees in question worked shifts of differing lengths during a typical pay period. Thus,

for example, if an employee worked two shifts of 18 hours and two shifts of 12 hours each week, there would be no way under the plaintiffs' analysis to determine the length of the employee's "workday," and thus no way to determine the proper accrual of annual leave for that employee.

In short, the plaintiffs' proposed construction of section 6303(a) is neither rational nor workable, and it therefore does not commend itself as the scheme that Congress likely intended.

The plaintiffs make an effort to show that the scheme for which they argue is the only fair one, but their argument lacks force. They say that it is fair for a senior firefighter to earn 24 hours of leave every two weeks because he must use 24 hours of annual leave if he takes a day off. While that is true, it ignores the fact that a firefighter who works only three days a week can take a week off from work and only be charged with leave for those three days, rather than for five days, as would an ordinary civil servant. Another way to view the matter is to compare the number of weeks a senior firefighter must work in order to earn a two-week vacation with the number of weeks an employee working a standard 40–hour week must work to earn the same two-week vacation. Under OPM's regulations, a senior firefighter must work 10 pay periods, or 20 weeks, to earn a vacation of that length. A senior civil servant also must work the same 10 pay periods, or 20 weeks, to earn a vacation of the same length. Under OPM's scheme, therefore, the two are similarly situated with respect to the amount of time they must work to earn a vacation of similar length. There is thus no force to the plaintiffs' argument that the annual leave accrual prescribed by 5 C.F.R. § 630.210 is inequitable to persons with uncommon tours of duty and that it is inconsistent with the policy of equal treatment for different classes of employees that underlies the leave statutes.

For its part, the government argues that the term "day" in section 6303(a) refers to the eight-hour workday of the typical federal civil servant. Although section 6303 contains no general definition of the term "day," the government looks to 5 U.S.C. § 6129, which defines that term to mean "eight hours" when the term is used with reference to employees on flexible and compressed schedules.

The plaintiffs counter with the argument that Congress made the "eight hour" definition applicable only to certain employees, thus giving rise to the inference that Congress must have intended the term to have a different definition for all other employees. We disagree. The term "day" was defined in section 6129 with reference to employees on compressed and flexible schedules because those employees were the focus of Congress's attention at that time. There is no indication that Congress meant to suggest that a different definition should apply to all employees not covered by section 6129.

Indeed, the legislative history of section 6129 puts that argument to rest. The Senate report on the legislation that included section 6129 noted that the term "day" would be expressly defined as eight hours for purposes of certain sections of the Leave Act, and it added:

> The current provisions in title 5, United States Code, relating to sick, annual, military and funeral leave, . . . have as a frame of reference the 8–hour day with the result that the provisions are stated in terms of "days."

S.Rep. No. 97–365, at 14 (1982), *reprinted in* 1982 U.S.C.C.A.N. 565, 576. The report then explained that the amendment, which "translates the term 'day' into an equivalent number of hours," would neither "decrease[ ] nor increase[ ] any employee's existing entitlement to leave." *Id.* The import of that statement is that even before the amendment the term "day" was understood to translate to eight hours, and that the amendment, although made for purposes of clarification, did not effect a change in the amount of leave earned by

employees on flexible or compressed schedules, even if their shifts were more than eight hours long.

The interpretation of the term "day" in section 6303 that is reflected in the legislative history of the 1982 amendment to the Annual and Sick Leave Act is a longstanding one. The Comptroller of the Currency has construed the term "day" in the Annual and Sick Leave Act to refer to the standard eight-hour day of the typical civil servant since the 1960s. *See* 49 Comp. Gen. 233, 238–39 (1969) (construing the term "day" as consisting of eight hours in recognition of the statutory purpose of avoiding "a disparity between the leave benefits of those employees who work a normal tour of duty consisting of five eight-hour days and those who work uncommon tours of duty"). And both before and after the enactment of the Annual and Sick Leave Act, OPM and its predecessor, the Civil Service Commission, have authorized agencies to establish separate annual leave accrual systems for employees with uncommon tours of duty. *See* 5 C.F.R. § 30.502 (1947). Although it has only been since 1994 that OPM's "uncommon tour of duty" regulation has specifically incorporated a reference to the proportional rate of leave accrual, *see* 59 Fed.Reg. 66635 (1994), the *Federal Personnel Manual* for many years directed that such a proportional system of leave accrual be used for such employees, *see, e.g., Federal Personnel Manual* § S2–6 (1973).

■ It is thus clear that the agency with responsibility for administering the Act has never viewed the term "day" in section 6303(a) as requiring that employees serving uncommon tours of duty be granted annual leave based on the length of their shifts. Accordingly, while Congress was not explicit about the meaning of the term "day" as applied to employees other than those covered by section 6129, we conclude that Congress meant the term "day" to refer to the eight-hour workday of the typical civil servant. *Cf. LaForte v. Horner,* 833 F.2d 977, 983 (Fed.Cir.1987)

(recognizing that "Congress's overall compensation scheme for federal firefighters" should be considered when construing relevant statutory provisions).

### C

To be sure, that construction of the term "day" does not entirely solve the problem of this case. If the term "day" means eight hours and the plaintiff firefighters are entitled to one-half day, three-fourths day, or one day of annual leave for each two weeks of work, they would earn only four, six, or eight hours of annual leave every two weeks, instead of the 7.2, 11.1, and 14.4 hours they earn under OPM's regulation.

■ Accrual of leave, however, does not depend only on the definition of the statutory term "day." Just as the term "day" in section 6303(a) must be understood to refer to the standard eight-hour day of the typical federal civil servant, the term "full biweekly pay period" in section 6303(a) must be understood to refer to the standard 80–hour biweekly pay period of the same typical federal civil servant. Significantly, the Act provides that an employee is deemed employed for a "full biweekly pay period" if he is employed during the days within that period, exclusive of holidays and nonworkdays, "which fall within his basic administrative workweek." 5 U.S.C. § 6302(b). Section 6101(2) of title 5 in turn provides that the head of each executive branch agency shall "establish a basic administrative workweek of 40 hours for each full-time employee in his organization." Congress provided for the basic administrative workweek of 40 hours before the Annual and Sick Leave Act of 1951 was passed. *See* Federal Employees Pay Act of 1945, ch. 212, § 604(a), 59 Stat. 295, 303 (1945). These related statutes demonstrate that section 6303(a) was intended to ensure that employees working a "full biweekly pay period," *i.e.,* two "basic administrative workweek[s] of 40 hours,"

would accrue 4, 6, or 8 hours annual leave during each pay period.

Read in that manner, section 6303(a) leaves a gap for employees who work more than the "basic administrative workweek of 40 hours," such as the plaintiffs in this case. OPM has sought to fill that gap with its regulation that addresses the rate of annual leave accrual for employees with uncommon tours of duty. The question we must address is whether OPM's regulation is a permissible gap-filling measure.

Congress authorized OPM to issue regulations "necessary for the administration" of the Annual and Sick Leave Act. *See* 5 U.S.C. § 6311. The regulation governing employees with uncommon tours of duty, 5 C.F.R. § 630.210(a), provides that employees who work more hours than are contained in a typical full biweekly pay period will accrue annual leave in proportion to the hours they work each pay period compared to the hours worked by an employee on the standard 80–hour pay period schedule. While that result is not dictated by section 6303(a), it is also not inconsistent with that statute, because neither section 6303(a) nor any other provision of the Act squarely addresses the issue of annual leave accrual for employees with uncommon tours of duty.

An agency that has been granted authority to promulgate regulations necessary to the administration of a program it oversees may fill gaps in the statutory scheme left by Congress if it does so in a manner that is consistent with the policies reflected in the statutory program. *See NationsBank, N.A. v. Variable Annuity Life Ins.*, 513 U.S. 251, 257, 115 S.Ct. 810, 130 L.Ed.2d 740 (1995) ("If the administrator's reading [of a statute] fills a gap or defines a term in a way that is reasonable in light of the legislature's revealed design, we give [that] judgment 'controlling weight'") (quoting *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 844, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984)); *Morton v. Ruiz*, 415 U.S. 199, 231, 94 S.Ct. 1055, 39 L.Ed.2d 270 (1974) ("The power of an administrative agency to administer a congressionally created and funded program necessarily requires the formulation of policy and the making of rules to fill any gap left, implicitly or explicitly, by Congress."); *see also United States v. Haggar Apparel Co.*, 526 U.S. 380, 392–93, 119 S.Ct. 1392, 143 L.Ed.2d 480 (1999) (deference due to an agency regulation that implements a statute's policy in "cases not covered by the statute's specific terms"); *United States v. Locke*, 471 U.S. 84, 95, 105 S.Ct. 1785, 85 L.Ed.2d 64 (1985) (noting the difference between gap-filling and rewriting rules specifically enacted by Congress in less-than-precise form).

Congress has not spoken directly to the issue of the rate at which employees who work uncommon tours of duty accrue annual leave. OPM has acted through regulation to fill that gap. The manner in which OPM has filled the gap comports with the congressional policy of granting employees annual leave in proportion to the number of hours they work per pay period, a policy that Congress has applied to each group of employees for which it has enacted specific legislation. We therefore uphold OPM's regulation as a reasonable gap-filling measure applying the Annual and Sick Leave Act to a class of employees for which Congress intended to grant annual leave but did not designate a specific rate of annual leave accrual.

*AFFIRMED.*