# United States Court of Appeals for the Federal Circuit

---

**JAMES L. KISOR,**
*Claimant-Appellant*

**v.**

**DAVID J. SHULKIN, SECRETARY OF VETERANS AFFAIRS,**
*Respondent-Appellee*

---

2016-1929

---

Appeal from the United States Court of Appeals for Veterans Claims in No. 14-2811, Judge Alan G. Lance, Sr.

---

## ON PETITION FOR PANEL REHEARING AND REHEARING EN BANC

---

KENNETH M. CARPENTER, Law Offices of Carpenter Chartered, Topeka, KS, filed a combined petition for panel rehearing and rehearing en banc for claimant-appellant.

IGOR HELMAN, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, filed a response to the petition for respondent-appellee. Also represented by CHAD A. READLER, ROBERT E. KIRSCHMAN, JR., MARTIN F. HOCKEY, JR.; Y. KEN LEE, SAMANTHA ANN SYVERSON, Office of General Counsel,

United States Department of Veterans Affairs, Washington, DC.

———————————

Before PROST, *Chief Judge*, NEWMAN, LOURIE, SCHALL[*], DYK, MOORE, O'MALLEY, REYNA, WALLACH, TARANTO, CHEN, HUGHES, and STOLL, *Circuit Judges*.

O'MALLEY, *Circuit Judge,* with whom NEWMAN and MOORE, *Circuit Judges*, join, dissent from the denial of the petition for rehearing en banc.

PER CURIAM.

# **O R D E R**

Appellant filed a combined petition for panel rehearing and rehearing en banc. A response to the petition was invited by the court and filed by the appellee.

The petition for rehearing was referred to the panel that heard the appeal, and thereafter, the petition and response were referred to the circuit judges who are in regular active service. A poll was requested, taken, and failed.

Upon consideration thereof,

IT IS ORDERED THAT:

The petition for panel rehearing is denied.

The petition for rehearing en banc is denied.

The mandate of the court will be issued on February 7, 2018.

FOR THE COURT

January 31, 2018
Date

/s/ Peter R. Marksteiner
Peter R. Marksteiner
Clerk of Court

---

\* Circuit Judge Schall participated only in the decision on the petition for panel rehearing.

# United States Court of Appeals
# for the Federal Circuit

---

**JAMES L. KISOR,**
*Claimant-Appellant*

**v.**

**DAVID J. SHULKIN, SECRETARY OF VETERANS AFFAIRS,**
*Respondent-Appellee*

---

2016-1929

---

Appeal from the United States Court of Appeals for Veterans Claims in No. 14-2811, Judge Alan G. Lance, Sr.

---

O'MALLEY, *Circuit Judge*, with whom NEWMAN and MOORE, *Circuit Judges*, join, dissenting from the denial of rehearing en banc.

The panel in this case held that the word "relevant" in 38 C.F.R. § 3.156(c)(1), a regulation promulgated by the Department of Veterans Affairs ("VA"), is ambiguous. *Kisor v. Shulkin*, 869 F.3d 1360, 1367 (Fed. Cir. 2017). Indeed, after granting that both parties had offered reasonable interpretations of the regulation, the panel held that the regulation is not just ambiguous on its face, but that the apparent ambiguity is insoluble by resort to standard interpretive principles. *Id.* at 1367–68. The panel, thus, turned to *Bowles v. Seminole Rock & Sand Co.*, 325 U.S. 410 (1945), and *Auer v. Robbins*, 519 U.S.

452 (1997), (collectively "*Auer*") to resolve the question presented. It concluded that the VA was entitled to deference for its interpretation of its own ambiguous regulation and, on that ground, unsurprisingly found in favor of the VA. 869 F.3d at 1368–69.

The panel predicated its decision on *Auer* deference, despite the Supreme Court's repeated reminder that statutes concerning veterans are to be construed liberally in favor of the veteran. *Henderson v. Shinseki*, 562 U.S. 428, 441 (2011); *Brown v. Gardner*, 513 U.S. 115, 117–18 (1994) (citation omitted). Whatever the logic behind continued adherence to the doctrine espoused in *Auer*—and I see little—there is no logic to its application to regulations promulgated pursuant to statutory schemes that are to be applied liberally for the very benefit of those regulated. When these two doctrines pull in different directions, it is *Auer* deference that must give way. I dissent from the court's refusal to take the opportunity to finally so hold.

Several justices of the Supreme Court recently have urged their colleagues to "abandon[] *Auer* and apply[] the [Administrative Procedure] Act as written." *Perez v. Mortg. Bankers Ass'n*, 135 S. Ct. 1199, 1212–13 (2015); *see, e.g.*, *id.* at 1213–25 (Thomas, J., dissenting) (identifying several "serious constitutional questions lurking beneath" the doctrine of *Auer* deference); *id.* at 1210–11 (Alito, J., concurring in part and concurring in the judgment) (noting that Justices Scalia and Thomas have offered "substantial reasons why the *Seminole Rock* doctrine may be incorrect"); *see also Decker v. Nw. Envtl. Def. Ctr.*, 568 U.S. 597, 616 (2013) (Roberts, C.J., concurring) (recognizing that "[q]uestions of *Seminole Rock* and *Auer* deference arise as a matter of course on a regular basis" and noting "some interest in reconsidering those cases"). *Auer* "encourag[es] agencies to write ambiguous regulations and interpret them later," which "defeats the purpose of delegation," "undermines the rule of law," and

ultimately allows agencies to circumvent the notice-and-comment rulemaking process. Lisa Schultz Bressman, *Beyond Accountability: Arbitrariness and Legitimacy in the Administrative State*, 78 N.Y.U. L. REV. 461, 551–52 (2003); *see also Christopher v. SmithKline Beecham Corp.*, 567 U.S. 142, 158 (2012) (acknowledging the "risk that agencies will promulgate vague and open-ended regulations that they can later interpret as they see fit, thereby frustrating the notice and predictability purposes of rulemaking" (internal quotation marks omitted)). And, on a structural level, by eliminating the separation between the entity that creates the law and the one that interprets it, *Auer* deference "leaves in place no independent interpretive check on lawmaking by an administrative agency." John F. Manning, *Constitutional Structure and Judicial Deference to Agency Interpretations of Agency Rules*, 96 COLUM. L. REV. 612, 639 (1996); *see also Decker*, 568 U.S. at 621 (Scalia, J., concurring in part and dissenting in part) ("*Auer* deference . . . contravenes one of the great rules of separation of powers: He who writes a law must not adjudge its violation."); *Egan v. Del. River Port Auth.*, 851 F.3d 263, 280 (3d Cir. 2017) (Jordan, J., concurring in the judgment) (critiquing the doctrine of *Auer* deference for its effect on the separation of powers).

This court has no authority to reconsider *Auer*, of course. But, leaving aside the continued vitality of *Auer* as a general proposition, granting *Auer* deference to the VA's interpretation of its own ambiguous regulations flies in the face of another line of Supreme Court precedent—the longstanding "canon that provisions for benefits to members of the Armed Services are to be construed in the beneficiaries' favor." *Henderson*, 562 U.S. at 441 (internal quotation marks omitted); *see Gardner*, 513 U.S. at 117–18 (citation omitted) (acknowledging the "rule that interpretive doubt is to be resolved in the veteran's favor"); *see also* Linda D. Jellum, *Heads I Win, Tails You Lose: Reconciling* Brown v. Gardner*'s Presumption that Interpretive*

*Doubt Be Resolved in Veterans' Favor with* Chevron, 61 AM. U. L. REV. 59, 77 n.141 (2011) (noting that "Gardner's Presumption . . . conflicts with Auer deference"). In a case like this one, where the agency's interpretation of an ambiguous regulation and a more veteran-friendly interpretation are in conflict, it is unclear from our precedent which interpretation should control. *See* James D. Ridgway, *Toward a Less Adversarial Relationship Between* Chevron *and* Gardner, 9 U. MASS. L. REV. 388, 398–401 (2014) (discussing this court's avoidance of "the tension between the canons of veteran friendliness and agency deference").[1] I have long expressed skepticism about the applicability of *Auer* in this context. *See, e.g.*, *Johnson v. McDonald*, 762 F.3d 1362, 1366–68 (Fed. Cir. 2014) (O'Malley, J., concurring) (noting "that the validity of *Auer* deference is questionable, both generally and specifically as it relates to veterans' benefit cases"); *Hudgens v. McDonald*, 823 F.3d 630, 639 n.5 (Fed. Cir. 2016) (O'Malley, J.) ("In many cases, the tension between *Auer* and *Gardner* is difficult to resolve, since both seemingly direct courts to resolve ambiguities in a VA regulation but would, in many cases, counsel contrary outcomes."). But, we keep finding reasons not to address the tension between these doctrines.

---

[1] As the response to the petition for rehearing notes, we have "rejected the argument that the pro-veteran canon of construction overrides the deference due to the [VA's] reasonable interpretation of an ambiguous *statute*." *Guerra v. Shinseki*, 642 F.3d 1046, 1051 (Fed. Cir. 2011) (emphasis added) (citing *Sears v. Principi*, 349 F.3d 1326, 1331–32 (Fed. Cir. 2003)). Whatever the merits of that conclusion, we have yet to decide how to resolve a conflict between the pro-veteran canon and the VA's interpretation of its own ambiguous *regulations*.

If only one of these doctrines can prevail in a given case, the pro-veteran canon must overcome *Auer*. "*Auer* deference is warranted only when the language of the regulation is ambiguous." *Christensen v. Harris County*, 529 U.S. 576, 588 (2000). In interpreting a regulation— including when deciding whether the regulation is ambiguous—we apply the ordinary "rules of statutory construction." *Roberto v. Dep't of Navy*, 440 F.3d 1341, 1350 (Fed. Cir. 2006) (citation omitted); *see also United States v. Lachman*, 387 F.3d 42, 54 (1st Cir. 2004) ("[W]e look to agency interpretations only when the statute or regulation remains ambiguous after we have employed the traditional tools of construction."). The "rule that interpretive doubt is to be resolved in the veteran's favor," *Gardner*, 513 U.S. at 117–18, is one of those rules of statutory construction. A regulation cannot be so ambiguous as to require *Auer* deference if a pro-veteran interpretation of the regulation is possible.

As the Supreme Court has acknowledged, moreover, the "general rule" of *Auer* deference "does not apply in all cases," such as those where there are "strong reasons for withholding the deference that *Auer* generally requires." *Christopher*, 567 U.S. at 155. The "rule that interpretive doubt is to be resolved in the veteran's favor," *Gardner*, 513 U.S. at 117–18, provides just such a reason. Deferring to the VA's interpretation of a statute makes some sense because Congress has delegated to the VA the authority to "issue[] a reasonable gap-filling or ambiguity-resolving regulation." *Sears*, 349 F.3d at 1332. But, where the VA itself has "promulgate[d] [a] vague and open-ended regulation[] that [it] can later interpret as [it] see[s] fit"—to the detriment of veterans—no such deference can be warranted. *Christopher*, 567 U.S. at 158–59.

The D.C. Circuit has reached an analogous conclusion in the context of Indian law, where "[t]he governing canon of construction requires that 'statutes are to be construed liberally in favor of the Indians, with ambiguous provi-

sions interpreted to their benefit.'" *Cobell v. Norton*, 240 F.3d 1081, 1101 (D.C. Cir. 2001) (quoting *Montana v. Blackfeet Tribe of Indians*, 471 U.S. 759, 766 (1985)). The *Cobell* court acknowledged that, under *Chevron, U.S.A. Inc. v. Nat. Res. Def. Council*, 467 U.S. 837 (1984), "ordinarily we defer to an agency's interpretations of ambiguous statutes entrusted to it for administration." *Cobell*, 240 F.3d at 1101. The court nevertheless found that "*Chevron* deference is not applicable" in the Indian law context. *Id.* It gave the agency's interpretation "'careful consideration,' but the normally-applicable deference was trumped by the requirement" to construe statutes liberally in favor of Indians. *Cobell v. Kempthorne* (*Cobell II*), 455 F.3d 301, 304 (D.C. Cir. 2006) (quoting *Cobell*, 240 F.3d at 1101). The D.C. Circuit has attributed its departure from the norm of *Chevron* deference to "the special strength of this canon." *Albuquerque Indian Rights v. Lujan*, 930 F.2d 49, 59 (D.C. Cir. 1991) (citing *Muscogee (Creek) Nation v. Hodel*, 851 F.2d 1439, 1445 n.8 (D.C. Cir. 1988)).

The veteran-friendly canon of construction, which originates in the Supreme Court's World War II–era expression of solicitude towards those who "drop their own affairs to take up the burdens of the nation," *Boone v. Lightner*, 319 U.S. 561, 575 (1943), carries comparable weight. Indeed, it is difficult to overstate the importance of the veteran-friendly approach to veterans' benefits statutes and their accompanying regulations. As we have recognized, "the veterans benefit system is designed to award 'entitlements to a special class of citizens, those who risked harm to serve and defend their country. This entire scheme is imbued with special beneficence from a grateful sovereign.'" *Barrett v. Principi*, 363 F.3d 1316, 1320 (Fed. Cir. 2014) (quoting *Bailey v. West*, 160 F.3d 1360, 1370 (Fed. Cir. 1998) (en banc) (Michel, J., concurring in the result)). That overarching motivation explains "the uniquely pro-claimant nature of the veterans com-

pensation system," *Hensley v. West*, 212 F.3d 1255, 1262 (Fed. Cir. 2000), as well as why the Supreme Court has "long applied" the pro-veteran canon of interpretation to the statutory scheme. *Henderson*, 562 U.S. at 441. Granting *Auer* deference to VA regulations conflicts directly with the moral principles underlying the veterans benefit system.

The VA nevertheless urges us to deny *en banc* review because the petitioner did not raise this argument in his appeal. Resp. to Pet. for Rehearing at 11 (citing *Pentax Corp. v. Robison*, 135 F.3d 760, 762 (Fed. Cir. 1998)). The central focus of the parties' arguments was the interpretation of § 3.156(c)(1). It is hard to imagine how a party can waive the question of the correct legal standard to apply in deciding that question. *Cf. Winfield v. Dorethy*, 871 F.3d 555, 560 (7th Cir. 2017) ("[W]aiver does not apply to arguments regarding the applicable standard of review."). I also note that, in determining whether the regulation is ambiguous, the panel expressly held that "canons of construction do not reveal its meaning." *Kisor*, 869 F.3d at 1367. The veteran-friendly canon should have fallen within that category.

Because the petition raises a significant question about our standard of review, waiver does not preclude us from addressing the question *en banc*. I note, moreover, that the absence of counsel at the early stages of veterans' appeals and the fact that, even where counsel appear, they often do so pro bono, will help assure that we will continue to find process-related excuses to avoid resolving this important question. And, as a result, veterans will continue to be prejudiced by resort to *Auer*. This case presents an ideal vehicle for us to consider the reach of *Auer* deference when it comes into conflict with the pro-veteran canon of construction. I respectfully dissent from the court's decision not to take this issue up now.