﻿Citation Nr: AXXXXXXXX
Decision Date: 03/19/19 Archive Date: 03/19/19

DOCKET NO. 181206-1150
DATE: March 19, 2019

ORDER

An effective date of July 7, 2016, but no earlier, for a 100 percent rating for loss of use of lower extremities is granted. 

FINDING OF FACT

From July 7, 2016, the diminished functioning of the bilateral lower extremities has equated to loss of use of the bilateral feet and of the bilateral legs.

CONCLUSION OF LAW

The criteria for entitlement to an effective date of July 7, 2016, for the grant of a 100 percent rating for loss of use of lower extremities have been met. 38 U.S.C. §§ 1155, 5103(a), 5103A, 5107; 38 C.F.R. §§ 3.400, 4.71a, Diagnostic Code 5110.

REASONS AND BASES FOR FINDING AND CONCLUSION

The Board notes that the rating decision on appeal was issued in March 2018. In May and December 2018, the Veteran elected the modernized review system. 84 Fed. Reg. 138, 177 (Jan. 18, 2019) (to be codified at 38 C.F.R. § 19.2(d)).

The assignment of effective dates of awards is generally governed by 38 U.S.C. § 5110 and 38 C.F.R. § 3.400. Except as otherwise provided, the effective date of an evaluation and an award of compensation based on an original claim or a claim for increase will be the date of receipt of the claim or the date entitlement arose, whichever is the later. 38 C.F.R. § 3.400. If the increase became ascertainable more than one year prior to the date of receipt of the claim, then the proper effective date would be the date of claim. In a case where the increase became ascertainable after the filing of the claim, then the effective date would be the date of increase. See Harper v. Brown, 10 Vet. App. 125 (1997).

The “date of the claim” means the date of the application based upon which benefits are awarded, not the original claim for service connection. See Sears v. Principi, 16 Vet. App. 244, 246-47 (2002), aff’d, 349 F.3d 1326 (Fed. Cir. 2003). In this context, it should be noted that the provisions of 38 U.S.C. § 5110 also refer to the date an application is received. While the term “application” is not defined in the statute, the regulations use the terms “claim” and “application” interchangeably, and they are defined broadly to include “a formal or informal communication in writing requesting a determination of entitlement, or evidencing a belief in entitlement, to a benefit.” 38 C.F.R. §§ 3.1(p), 3.155; Servello v. Derwinski, 3 Vet. App. 196, 198 (1992).

In a March 2018 rating decision, the Agency of Original Jurisdiction (AOJ) granted service connection for loss of use of bilateral lower extremities (associated with degenerative disc disease of the lumbar spine), and assigned a 100 percent rating, effective January 18, 2018, pursuant to 38 C.F.R. § 4.71a, Diagnostic Code (DC) 5110. (The Board notes that service connection is also in effect for traumatic brain injury with traumatic encephalitis and Parkinson’s disease.) The Veteran asserts that an earlier effective date is warranted for the 100 percent rating assigned.

In a November 2018 rating decision, the AOJ denied an earlier effective date for the 100 percent rating as it was determined that as of January 18, 2018, which the AOJ determined was the date of his claim, the functioning of his bilateral lower extremities was so diminished that amputation by prosthesis would equally serve him, and prior to this date loss of use was not shown. 

A 100 percent rating is warranted for loss of use of both feet under DC 5110. 38 C.F.R. § 4.71a, DC 5110. Additionally, a rating under DC 5110 does not preclude entitlement to special monthly compensation (SMC). 38 C.F.R. §§ 4.71a, DC 5110 at superscript 1. The Board notes that in March 2018, the AOJ granted SMC per 38 U.S.C. § 1114(o) and 38 C.F.R. § 3.350(e) based on loss of use of bilateral lower extremities, effective January 18, 2018. Although such is not in appellate status, should an earlier effective date be granted per DC 5110, the SMC per §§ 1114(o), 3.350(e) would be assigned from the same date.

The first question in this appeal is whether loss of use of the lower extremities is shown prior to January 18, 2018, and whether an effective date is warranted prior to such date. To determine whether an effective date is warranted, a look at the procedural history is necessary. 

The Veteran’s bilateral lower extremities were previously separately rated 40 percent disabling in contemplation of radiculopathy associated with the lumbar spine, per 38 C.F.R. § 4.71a, DC 8520. Such ratings were assigned in a November 2015 rating decision, effective October 2, 2015. 

On February 9, 2017, the Veteran filed an increased rating claim for, in pertinent part, neurological and movement disorders. In an August 2, 2017 rating decision, the AOJ, in pertinent part, granted service connection for bradykinesia and tremors, left and right lower extremities, assigning separate 10 percent ratings, and a 30 percent rating for balance impairment, effective June 9, 2016. Such ratings are still in effect. 

On November 6, 2017, the Veteran filed a claim asserting that the August 2017 rating decision was in error as it failed to grant loss of use of bilateral lower extremities. In a January 17, 2018 rating decision, the AOJ denied increased ratings for radiculopathy of the bilateral lower extremities. On January 18, 2018, the Veteran requested reconsideration of the August 2017 rating decisions and specifically sought a rating for loss of use of bilateral lower extremities. 

Based on the above, the Board has determined that the Veteran’s claim for loss of use of the lower extremities stems from his February 9, 2017 claim in which he was claiming neurological and movement disorders. Also, the 100 percent rating assigned in the March 2018 rating decision stems from the Veteran’s request for reconsideration of the August 2017 rating decision and his November 2017 assertion that a rating was warranted for loss of use of the bilateral lower extremities. It is also noted that during such periods additional medical evidence was associated with the claims folder pertaining to the lower extremities. Thus, in consideration of the February 9, 2017 claim, the Board will determine the date in which loss of use of the lower extremities was shown by the medical evidence of record, or if the increase became ascertainable more than one year prior to the date of receipt of the claim. 

The AOJ assigned the 100 percent rating based on findings contained in a February 9, 2018 Peripheral Nerves examination. With regard to his lower extremities, the examiner checked the box that his constant pain and intermittent pain was severe; paresthesias/dysesthesias was mild; and, numbness was moderate. The examiner stated that the Veteran’s legs frequently give out and that he uses Canada crutches and mainly uses a wheelchair. The examiner stated that there is no effective function left in both lower extremities. There was active movement with gravity eliminated with knee extension, ankle plantar flexion, and ankle dorsiflexion. There was muscle atrophy in the calves. His gait was not normal; he needed assistance when walking; he could not walk in a straight line even with crutches; and, he uses a wheelchair. There was incomplete paralysis of the sciatic nerve which was indicated to be moderately severe; incomplete paralysis of the external popliteal which was indicated to be moderate; incomplete paralysis of the musculocutaneous nerve indicated to be mild; incomplete paralysis of the anterior tibial nerve indicated to be moderate; incomplete paralysis of the internal popliteal nerve indicated to be mild; incomplete paralysis of the posterior tibial nerve indicated to be mild; incomplete paralysis of the anterior crural nerve indicated to be moderate; and incomplete paralysis of the obturator nerve indicated to be mild; and, external cutaneous nerve of the thigh indicated to be mild. The examiner stated that the Veteran has no effective function of both lower legs; he cannot push off or walk; needs Canada crutches or a wheelchair at all times; and, he experiences frequent falls. 

As detailed, the February 2018 examiner specifically stated that there was no effective function of the lower legs and that he required crutches and a wheelchair. Although prior to this examination no other examiner made this specific finding, the subjective complaints and objective medical evidence from July 7, 2016, are consistent with the findings contained in the February 2018 examination report. Thus, based on review of the medical evidence, the Board has determined that from July 7, 2016, the symptomatology associated with the Veteran’s bilateral lower extremities showed diminished functioning which equated to loss of use of the bilateral feet and of the bilateral legs. Although the examiner did not specifically proffer a medical opinion that his bilateral lower extremities equated to diminished functioning which equated to loss of use, on this day and thereafter, the medical evidence consistently reflects that the Veteran’s bilateral lower extremities had worsened to the point which equated to loss. 

Specifically, on July 7, 2016, the Veteran sought private medical treatment complaining of increased weakness and muscle tremor to the upper and lower extremities. He reported using walking crutches, while in the past he had used a cane. He had tremor noted in both upper and lower extremities, and weakness noted most particular to the lower extremities. 11/29/2016 Medical Treatment Record-Non-Government Facility at 67-68. On July 21, 2016, a second opinion was sought regarding the Veteran’s neurological symptoms. He described fleeting shooting pains in all 4 limbs without clear triggers and intermittent shaking in his right leg if stressed or fatigued. He reported that his legs hurt while in bed, rated as an 8 on a 10-point scale. He moves his legs at night which has improved with dopaminergic medications. He reported diffuse quivering in his muscles day or night. He reported use of canes because without he tends to trip at least once a day when his foot may catch on a corner. His legs give out and balance is poor. On examination, he walked with walking sticks with widened base. He had some irregular distractible postural and action tremor in the right hand and leg. 12/16/2016 Medical Treatment Record-Non-Government Facility at 34-36. 

An October 21, 2016 neuropsychiatric examination reflects the Veteran’s complaints of pain throughout the legs and knees with poor balance. He reported falling once every two weeks due to leg weakness and he ambulated with arm crutches. 12/08/2016 Medical Treatment Record-Non-Government Facility at 11. A November 2, 2016 VA mental health record reflects that his legs were weak and he required leg crutches to walk. 11/17/2016 CAPRI at 2. A month later, on December 6, 2016, the Veteran was prescribed a 4-wheel full size scooter, tall forearm crutches, and it was requested that a modular ramp be installed in his home. Such was ordered due to the Veteran’s complaints of his legs giving out from under him, and objective findings of a wide base gait with his right foot dragging with a reluctance to not use arm crutches due to fear of falling. He reported falling 1-2 times per week and high levels of pain with ambulation. Also, while he had seemed to suggest at the October 2016 psychiatric evaluation that he could drive, he reported on December 6 that his wife and children were driving him. 12/13/2016 CAPRI at 1-12. 

A January 11, 2017 statement from a Physician’s Assistant reflects that the Veteran had been experiencing progressive neurological and musculoskeletal symptoms over time. He has to ambulate with assistive devices and even with the assistance devices he is very unsteady on his feet. He is unable to dress himself due to his muscle tremor and weakness. His spouse has to dress him every morning and help with other personal hygiene issues. 02/09/2017 Medical Treatment Record-Non-Government Facility.

A January 2017 Examination for Housebound Status or Permanent Need for Regular Aid and Attendance reflects that he needs assistance in bathing and tending to hygiene needs due to weakness and muscle tremors. His posture was poor. He requires assistive devices for locomotion. 02/09/2017 VA 21-2680 Examination for Housebound Status or Permanent Need for Regular Aid and Attendance.

A May 5, 2017 VA examination reflects that his gait was abnormal, unsteady, and he uses Canada crutches to walk. He had less than normal strength with knee extension, ankle plantar flexion, and ankle dorsiflexion. The examiner commented that he has difficulty with ambulation, he cannot walk for over a block at a time without requiring rest, he has tremors, and he is fatigued and weak. Although the examiner checked the ‘No’ box with regard to no effective function remains other than that which would be equally served by an amputation with prosthesis, the symptoms described are consistent with diminished functioning in the lower extremities. 06/07/2017 C&P Exam at 10. 

A December 20, 2017 VA examination reflects the Veteran’s report that the motor function of his arms and legs continue to deteriorate. With regard to the lower extremities, he is able to transfer from chair to toilet and chair to chair holding on to Canada crutches, grabbing bars, or a table top. He sits on the floor to shower and cannot get up on his own due to muscle fatigue and weakness. He can lift his legs to move them but cannot hold them up. His legs shake if they are not planted on the floor. He loses muscle strength and balance and falls at least once daily. With regard to his peripheral nerve condition of the lower extremities, his constant pain was moderate; intermittent pain was severe; there was no paresthesias/dysesthesias; and, mild numbness of the right lower extremity and no numbness of the left lower extremity. His gait was not normal. He was unsteady, needs to hang on to railings, tabletops, or use Canada crutches to walk even one step. The examiner stated that he has neurodegenerative changes from chronic traumatic encephalopathy and Parkinsonism that impairs the transmission of neuronal signals from the brain to the peripheral nerves and muscles. There was incomplete paralysis of the sciatic nerve which was indicated to be moderate; and, incomplete paralysis of the external popliteal which was indicated to be moderate. The examiner opined that his condition resulted in limitations of decreased tolerance for physical activity, need for assistive device for ambulation, and at a higher risk for falling. Although the examiner checked the ‘No’ box with regard to no effective function remains other than that which would be equally served by an amputation with prosthesis, the symptoms described are consistent with diminished functioning in the lower extremities. 12/21/2017 C&P Exam.

A January 3, 2018 physical therapy record reflects that the Veteran had difficulty walking, recent falls, unsteady gait, impaired balance, and functional mobility. 1/05/2018 Medical Treatment Record-Non-Government Facility.

Again, based on the above, though prior to the February 2018 examination, an examiner did not specifically provide the opinion that the Veteran’s lower extremities resulted in diminished functioning which equated to loss of the use of the feet and legs, the medical evidence of record reflects that the Veteran had impaired balance and functional mobility due to his lower extremity symptomatology which essentially resulted in an inability to use his legs. 

Although the Board finds that an effective date of July 7, 2016, is warranted for loss of use of the lower extremities, which constitutes an increase in the one year prior to date of receipt of the claim, an increase is not shown prior to this date. See 11/29/2016 Medical Treatment Record-Non-Government Facility. Although records prior to this date reflect bilateral leg pain and weakness, the medical records reflect that the Veteran was able to ambulate and that he was not relying on an assistive device for mobility such as Canadian crutches or a wheelchair. The records do not reflect diminished functioning which equated to loss of use of the bilateral feet and of the bilateral legs. 

 

JAMES L. MARCH

Veterans Law Judge

Board of Veterans’ Appeals

ATTORNEY FOR THE BOARD M.W. Kreindler, Counsel