# Rate of Accrual of Annual Leave by a Civilian Employee Appointed While on Terminal Leave Pending Retirement From One of the Uniformed Services

A member of a uniformed service appointed to a civilian position while on terminal leave pending retirement from the service is entitled to credit for his years of active military service only for the duration of his terminal leave.

Once the employee retires from the uniformed service, he no longer is entitled to credit for his years of active military service unless he satisfies certain statutory exceptions detailed in 5 U.S.C. § 6303(a) or (e). The employee's leave-accrual rate must be recalculated upon his retirement to reflect his reduced years of creditable service.

October 16, 2007

MEMORANDUM OPINION FOR THE GENERAL COUNSEL
DEPARTMENT OF DEFENSE

"Terminal leave" is "a term of art originating during World War II" meaning "a leave of absence granted at the end of one's period of service." *Terry v. United States*, 97 F. Supp. 804, 806 (Ct. Cl. 1951). Members of the uniformed services who are on terminal leave pending retirement from active duty and who accept civilian employment with the federal government are entitled to receive the pay of both positions "for the unexpired portion of the terminal leave." 5 U.S.C. § 5534a (2000).

You have asked us whether a member of a uniformed service who is appointed to a civilian position while on terminal leave pending retirement is entitled to credit for his years of active military service for the purpose of determining the rate at which he accrues annual leave under section 203 of the Annual and Sick Leave Act, Pub. L. No. 82-233, 65 Stat. 672, 679–80 (1951) (codified as amended at 5 U.S.C. § 6303 (2000 & Supp. V 2005)).[1] We conclude that such a member is entitled to credit for his years of active military service only for the duration of his terminal leave. Once the employee retires from the uniformed service, he no longer is entitled to credit for his years of active military service unless he satisfies certain statutory exceptions, *see id.* §§ 6303(a)(A)–(C), (e), and the employee's leave-accrual rate must be recalculated upon his retirement to reflect his reduced years of creditable service.

---

[1] In considering this question, we have had the benefit of the views of the Department of Defense and the Office of Personnel Management. *See* Letter for Steven G. Bradbury, Acting Assistant Attorney General, Office of Legal Counsel, from Daniel J. Dell'Orto, Principal Deputy General Counsel, Department of Defense (June 26, 2006). The Office of Personnel Management has informed us that its views are expressed in its April 2005 letter to your office. *See* Letter for Daniel J. Dell'Orto, Principal Deputy General Counsel, Department of Defense, from Mark A. Robbins, General Counsel, Office of Personnel Management (Apr. 14, 2005). This opinion memorializes advice that we provided to you informally in November 2006.

## I.

As a general matter, a member of a uniformed service "whose pay or allowance is fixed by statute or regulation may not receive additional pay or allowance for the disbursement of public money or for any other service or duty, unless specifically authorized by law," 5 U.S.C. § 5536 (2000).[2] Section 203 of the Dual Compensation Act, Pub. L. No. 88-448, 78 Stat. 484, 487 (1964), however, authorizes a member of a uniformed service on terminal leave pending retirement from active service to accept civilian employment and to receive the pay of both positions:

> A member of a uniformed service who has performed active service and who is on terminal leave pending separation from, or release from active duty in, that service under honorable conditions may accept a civilian office or position in the Government of the United States, its territories or possessions, or the government of the District of Columbia, and he is entitled to receive the pay of that office or position in addition to pay and allowances from the uniformed service for the unexpired portion of the terminal leave.

5 U.S.C. § 5534a. It is well settled, and both the Department of Defense ("DoD") and the Office of Personnel Management ("OPM") agree, that a member of a uniformed service on terminal leave is still on active duty and has not yet been "release[d]" from the service. *See* 10 U.S.C. § 701(e) (2000) ("Leave taken before discharge is considered to be active service."); *Madsen v. United States*, 841 F.2d 1011, 1013 (10th Cir. 1987) ("Terminal leave, or leave taken prior to discharge, is statutorily defined as active duty service.").

The "pay" for a civilian position to which a service member on terminal leave is entitled necessarily includes annual leave with pay. *See Matter of Office of Technology Assessment Authority for Incentive Awards Program*, 67 Comp. Gen. 418, 420 (1988).[3] Section 6303 of title 5, United States Code, governs a civilian employee's entitlement to annual leave.[4] Section 6303(a) provides that "[a]n

---

[2] The uniformed services are statutorily defined to include the Armed Forces (the Army, Navy, Air Force, Marine Corps, and Coast Guard, *see* 10 U.S.C. § 101(a)(4) (2000)), and the commissioned officer corps of the National Oceanic and Atmospheric Administration and the Public Health Service, *see* 5 U.S.C. § 2101(2), (3) (2000). *See* 10 U.S.C. § 101(a)(5) (2000) (same).

[3] Although the Executive Branch is not bound by the legal opinions of the Comptroller General, this office considers them useful sources in resolving appropriation issues. *See, e.g.*, *Submission of Aviation Insurance Program Claims to Binding Arbitration*, 20 Op. O.L.C. 341, 343 n.3 (1996).

[4] For the purposes of section 6303, section 6301 defines an "employee" to include both an "employee" within the meaning of 5 U.S.C. § 2105 (2000) ("employee" includes any individual who is appointed by, among others, the President or Congress, performs a "Federal function under authority of law or an Executive act" and is subject to the supervision of an appointing authority) as well as "an individual first employed by the government of the District of Columbia before October 1, 1987." *Id.*

employee is entitled to annual leave with pay which accrues" at graduated rates for employees with specified periods of creditable service: four hours of leave per biweekly pay period for employees with less than three years of creditable service, six hours per pay period for those with "3 but less than 15 years of service," and eight hours for more years of service." The change in an employee's rate of accrual of annual leave "takes effect at the beginning of the pay period after the pay period . . . in which the employee completed the prescribed period of service." 5 U.S.C. § 6303(c).

"In determining years of service" an employee is to be credited with, section 6303(a) directs that "an employee is entitled to credit for all service of a type that would be creditable" under two provisions of title 5, sections 8332 and 6303(e). 5 U.S.C. § 6303(a). Section 8332 counts active military service as creditable service, subject to a number of detailed conditions and exceptions. 5 U.S.C. § 8332(c)(1)(A) & (B) (2000). Specifically, if an employee "is awarded retired pay based on any period of military service," the employee's military service will generally not be counted "unless the retired pay is awarded" either based upon certain service-connected disabilities or pursuant to certain provisions of title 10 of the United States Code (specifically, 10 U.S.C. §§ 12731–12741 (2000 & Supp. IV 2004)) governing retired pay for non-regular service. 5 U.S.C. § 8332(c)(2).

Section 6303(a) contains a similar exclusion limiting the credit that a civilian employee who is a retired member of a uniformed service may receive for his years of active military service. A civilian employee retired from a uniformed service "is entitled to credit for active military service only if" one of three conditions is met: (1) "his retirement was based on disability" received in the line of duty "as a direct result of armed conflict" or caused by "an instrumentality of war and incurred in [the] line of duty during a period of war," 5 U.S.C. § 6303(a)(A); (2) his service "was performed in the armed forces during a war, or in a campaign or expedition for which a campaign badge has been authorized," *id.* § 6303(a)(B); or (3) "on November 30, 1964, he was employed in a position to which this subchapter applies and thereafter continued to be so employed without a break in service of more than 30 days," *id.* § 6303(a)(C). Section 3501 defines "retired member of a uniformed service" to mean "a member or former member of a uniformed service who is entitled, under statute, to retired, retirement, or retainer pay on account of his service as such a member." 5 U.S.C. § 3501(2) (2000). Thus, with limited exceptions, title 5 prohibits a retired uniformed service member from receiving credit for his military service for purposes of calculating his annual leave while he is entitled to receive retirement pay. *See id.* §§ 3501(2), 6303(a), & 8332(c)(2).

---

§ 6301(1), (2) (2000). The definition of "employee" in section 6301 affirmatively excludes 13 categories of positions, such as, for example, "an employee of either House of Congress or of the two Houses," *id.* § 6301(vi), and "an officer in the executive branch or in the government of the District of Columbia who is designated by the President, except a postmaster, United States attorney, or United States marshal," *id.* § 6301(xi).

Section 202(a)(1) of the Federal Workforce Flexibility Act of 2004, Pub. L. No. 108-411, 118 Stat. 2305, 2312 (adding 5 U.S.C. § 6303(e)), provides one such exception. That provision required OPM to promulgate regulations that would permit the head of an appointing agency to credit a new civilian employee for past uniformed service notwithstanding section 6303(a), so long as the employee's duties while in the uniformed service "directly relate to the duties" of the civilian appointment and, in the judgment of the head of the appointing agency, granting credit for such years of service "is necessary in order to achieve an important agency mission or performance goal." 5 U.S.C. § 6303(e)(1)(A)(i), (B). Under OPM's regulations, the head of an agency may "provide credit for active duty uniformed service that otherwise would not be creditable under 5 U.S.C. 6303(a)" upon determining that the employee's skills and experience are "[e]ssential to the new position," "were acquired through performance in a position in the uniformed services having duties that directly relate to the duties of the position," and are "[n]ecessary to achieve an important agency mission or performance goal." 5 C.F.R. § 630.205(b)(1) & (2) (2007).

## II.

OPM interprets section 6303(a) to require an agency to credit the employee for his years of active military service until his retirement. OPM further reads section 6303(a) to require that the employee continue to receive that credit even after he has retired from the uniformed service. OPM reasons that the agency has no specific statutory authority to adjust the leave-accrual rate downward after an employee retires from a uniformed service and, therefore, there is no legal basis authorizing the recalculation of the leave accrual rate upon retirement from the military.[5]

DoD contends that a uniformed service member who is appointed to a civilian position while on terminal leave should be treated *as if he has already retired*, and should not be entitled to credit for his years of active military service, either at the time he is appointed to a civilian position or afterwards. DoD bases its interpretation of section 6303(a) on its understanding of the purposes of section 5534a,

---

[5] OPM's interpretation does not appear in regulations promulgated pursuant to notice and comment procedures, nor does it appear in any decision issued pursuant to formal adjudication procedures. OPM has previously articulated this interpretation in informal decisions resolving claims brought by employees who were hired while on terminal leave. *See, e.g.*, *In re Passey*, No. 04-0023 (Jan. 11, 2006) (concluding that claimant is "entitled to credit for his entire period of military service in determining his leave accrual rate at the time of his initial civilian appointment" and that his "military retirement . . . does not disturb, set aside, or subject his leave accrual rate to recalculation for the period of his current civilian appointment"). OPM's interpretation also previously appeared in OPM's *Guide to Processing Personnel Actions Operating Manual* ("*OPM Manual*") ch. 6, subch. 1, at 1–2 (2007) (available at http://www.opm.gov/feddata/gppa/gppa.asp, last visited ca. 2007) (defining "Service Computation Date," which agency must set "at appointment" for the purpose of determining the rate at which an employee accrues annual leave).

which DoD says was intended to permit members of the military to be hired as civilian employees by the government in order to retain personnel with valuable skills, but was not intended to create a windfall of compensation for retiring members of the military.

While your opinion request was pending, Congress resolved the issue prospectively in section 1101 of the John Warner National Defense Authorization Act for FY 2007 ("the Warner Act"), Pub. L. No. 109-364, 120 Stat. 2083, 2407 (Oct. 17, 2006). That provision amends 5 U.S.C. § 5534a to provide that a uniformed service member who is appointed to a civilian position while on terminal leave is "entitled to accrue annual leave with pay in the manner specified in section 6303(a) of this title *for a retired member* of a uniformed service." (Emphasis added.) Going forward, any member appointed to a civilian position thus will be entitled to credit for his years of active military service only if he either satisfies the requirements of section 6303(a)(A)–(C) or receives credit under the regulations implementing section 6303(e). You have asked us to resolve the issue under the prior law to determine whether DoD may adjust the leave-accrual rate of retired uniformed service members who were appointed to civilian positions before the effective date of the new law.

### III.

In resolving this issue, we will apply the principles set forth in *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984). *See Proposed Agency Interpretation of "Federal Means-Tested Public Benefits" Under Personal Responsibility and Work Opportunity Reconciliation Act of 1996*, 21 Op. O.L.C. 21, 21–23 (1997); Memorandum for James W. Carroll, Jr., Deputy General Counsel, Department of the Treasury, from Noel J. Francisco, Deputy Assistant Attorney General, Office of Legal Counsel, *Re: Validity of Regulation Interpreting Federal Alcohol Administration Act to Prohibit Slotting Fees in Connection with Alcohol Sales* at 3 (Mar. 11, 2005). Under *Chevron*, we first ask "whether Congress had directly spoken to the precise question at issue." 467 U.S. at 842. This matter presents two distinct statutory questions: (1) whether a service member who is appointed to a civilian position is entitled to credit for his years of active service in determining his leave-accrual rate while he continues on terminal leave; and (2) whether such an employee continues to be entitled to credit for his years of active service even after he retires from uniformed service. If Congress has addressed these questions directly, then we "must give effect to the unambiguously expressed intent of Congress." *Id*. at 842–43. If "the statute is silent or ambiguous with respect to the specific issue[s]," however, then we proceed to consider whether Congress has delegated to OPM the authority to administer the

statute and "whether the agency's answer is based on a permissible construction of the statute." *Id*. at 843.[6]

We resolve both issues at step one of the *Chevron* inquiry. We conclude that OPM's interpretation with respect to the first issue—that a service member appointed to a civilian position while on terminal leave from a uniformed service is entitled to credit for his years of active military service until his retirement—is not only a permissible construction of 5 U.S.C. §§ 5534a and 6303(a), but it is required by the plain terms of those two provisions. We also conclude, however, that OPM's interpretation with respect to the second issue—that such an employee is entitled to credit for his years of active service even after retirement from uniformed service—conflicts with the plain terms of section 6303(a) and, therefore, is not a permissible construction of that provision.

## A.

In determining whether Congress has addressed these issues, we begin with the text of the statute. *Barnhart v. Sigmon Coal Co.*, 534 U.S. 438, 450 (2002). Congress "says in a statute what it means and means in a statute what it says there. When the words of a statute are unambiguous, then, this first canon is also the last: 'judicial inquiry is complete.'" *Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253–54 (1992) (quoting *Rubin v. United States*, 449 U.S. 424, 430 (1981)); *accord The Food and Drug Administration's Discretion to Approve Methods of Detection and to Define the Term "No Residue" Pursuant to the Federal Food, Drug, and Cosmetic Act*, 19 Op. O.L.C. 247, 263 (1995) (applying *Chevron* principles in analyzing whether agency interpretation of statute was lawful).

Under the express terms of section 5534a as it stood before the effective date of section 1101 of the Warner Act, a uniformed service member on terminal leave appointed to a civilian position would be "entitled" to receive both his military pay and allowances and the pay of his civilian position, including annual leave, "for the unexpired portion of the terminal leave." Under section 6303(a), a civilian employee likewise would be "entitled" to receive annual leave accruing at a rate determined by his years of "service of a type that would be creditable under [5 U.S.C. §] 8332 . . . and for all service which is creditable by virtue of []section [6303](e)." The years of creditable service to which a uniformed service member

---

[6] Congress has vested OPM with authority to "prescribe regulations necessary for the administration" of the Annual and Sick Leave Act. 5 U.S.C. § 6311 (2000). The Director of OPM also is responsible, as a general matter, for "securing accuracy, uniformity, and justice in the function of the Office," *id*. § 1103(a)(1) (2000), and for "executing, administering, and enforcing" the "civil service rules and regulations of the President and the Office and the laws governing the civil service," *id*. § 1103(a)(5)(A). *See generally Contreras v. United States*, 215 F.3d 1267, 1274 (Fed. Cir. 2000) (holding that OPM has authority under the Annual and Sick Leave Act to "fill gaps in the statutory scheme left by Congress if it does so in a manner that is consistent with the policies reflected in the statutory program").

on terminal leave is entitled under section 6303(a) include years of active military service. Honorable active military service is service "of a type" creditable for the purpose of determining the amount of an annuity under section 8332(c)(1) and, therefore, is creditable service for the purpose of determining an employee's rate of accrual of annual leave under section 6303(a). *See* 5 U.S.C. § 8331(13) (2000) (credit for "military service" includes "honorable active service"); 10 U.S.C. § 101(d)(3) (2000) ("active service" includes "service on active duty or full-time National Guard duty"); *id.* § 101(d)(1) & (5) (further defining "active duty" and "full-time National Guard duty"). As noted above, a uniformed service member on terminal leave remains on active duty and has not yet retired. *See* 10 U.S.C. § 701(e) (2000) ("Leave taken before discharge is considered to be active service."); *Madsen*, 841 F.2d at 1013 (time on terminal leave is "undisputed active duty status"). Accordingly, such a member is not subject to the exclusion from credit because he is not retired and, therefore, he need not qualify under the exceptions in section 6303(a)(A)–(C) to receive credit for his years of active service. Rather, he continues to be entitled to credit for his years of active military service under sections 6303(a) and 8332(c)(1) for the purpose of accruing annual leave.

DoD contends that these provisions are best interpreted to provide that a member who is appointed to the civil service while on terminal leave pending retirement is not entitled to accrue more than four hours of annual leave, because, before retirement, his military service cannot be considered creditable service for purposes of 5 U.S.C. § 6303(a). According to DoD, because the purpose of section 5534a was only to enable departing members of the uniformed services to take positions with the federal government while on terminal leave, and was not to provide members of the armed forces on terminal leave with a windfall of annual leave to which they would not otherwise be entitled, section 6303(a) should be read to preclude a member on terminal leave from receiving credit for his years of active military service in calculating the rate at which he accrues annual leave in his civilian position. Even if that is a correct statement of the statutory purpose, "it is ultimately the provisions of our laws rather than the principal concerns of . . . legislators" that determine a statute's meaning. *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 79 (1998). Where, as here, "the statutory language is clear and unambiguous, we need neither accept nor reject a particular 'plausible' explanation for why Congress would have written a statute." *Barnhart*, 534 U.S. at 460–61. Rather, "deference to the supremacy of the Legislature, as well as recognition that Congressmen typically vote on the language of a bill, generally requires us to assume that 'the legislative purpose is expressed by the ordinary meaning of the words used.'" *United States v. Locke*, 471 U.S. 84, 95 (1985) (quoting *Richards v. United States*, 369 U.S. 1, 9 (1962)).

## B.

The plain language of section 6303(a) is equally clear in providing that a uniformed service member appointed to a civilian position while on terminal leave generally loses his entitlement to receive credit for his prior active service upon retirement. Once a member of a uniformed service transitions from "terminal leave" (an active-duty status) to "retired," he "is retired" within the meaning of sections 3501(2) and 6303(a). From then on, such an employee is "entitled" to receive credit for his years of active military service *only* to the extent that either his prior active military service falls into one of the three express exceptions in 5 U.S.C. § 6303(a)(A)–(C) or the head of the agency grants him credit under 5 U.S.C. § 6303(e) for service that otherwise would not be creditable. *See also id.* § 8332(c)(2) (employee "awarded retired pay based on any period of military service" is not entitled to credit for any period of military service unless retired pay is awarded based upon certain types of service-connected disabilities or pursuant to the provisions for certain non-regular service at 10 U.S.C. §§ 12731–12741). OPM's interpretation of section 6303(a), however, would require agencies to continue to credit an employee who was appointed while on terminal leave for his years of active military service even after he has retired and regardless of whether he satisfies one of the three statutory exceptions set forth in section 6303(a).

OPM contends that it is foreclosed from adjusting an employee's years of credit downward after his retirement from active military service because nothing in section 6303 authorizes the reduction of the employee's leave accrual rate based on the employee's subsequent retirement from the military. We disagree. OPM's interpretation is inconsistent with the plain terms of title 5 of the United States Code, which establish the only basis for an employee's entitlement to pay, including annual leave. "Title 5 of the United States Code and its implementing regulations set forth in meticulous detail the compensation that attaches to positions in the government service. . . . These provisions are the *exclusive* source of employees' compensation rights." *Kizas v. Webster*, 707 F.2d 524, 536 (D.C. Cir. 1983) (emphasis in original); *see also Schism v. United States*, 316 F.3d 1259, 1268 (Fed. Cir. 2002) ("Congress—and only Congress—can authorize the benefits that a retired federal employee, whether civilian or military, is entitled to receive."). Indeed, section 5536 expressly provides that an employee "whose pay or allowance is fixed by statute or regulation *may not* receive additional pay or allowance for the disbursement of public money . . . unless *specifically authorized* by law." 5 U.S.C. § 5536 (emphases added). Far from having "specifically authorized" former service members to continue to receive credit for their service after retirement, Congress has *expressly barred* giving credit under such circumstances. That alone provides sufficient authority to revisit the accrual determination.

Furthermore, although we do not rely upon the provision to support our conclusion, section 6303(c) reasonably may be construed to authorize an employer to revisit a military retiree's leave-accrual rate. That provision states that "[a] change in the rate of accrual of annual leave by an employee under this section takes effect at the beginning of the pay period after the period . . . in which the employee completed the prescribed period of service." 5 U.S.C. § 6303(c). We believe that the phrase "completed the prescribed period of service" may be construed to apply to the retiree's completion of his military service. Take, for example, a member of a uniformed service appointed as a civilian employee while on terminal leave who has 20 years of active military service and no other creditable service: Before the end of his terminal leave and his retirement, such an employee is entitled to accrue annual leave at a rate of eight hours per biweekly pay period. After retirement from the uniformed service, however, he would be entitled to zero years of creditable service under section 6303(a). Because the employee would have completed "less than three" years of *creditable* service, he would be entitled to accrue annual leave at a rate of only four hours per biweekly pay period. It would be reasonable to read section 6303(c) to provide that the "change in the rate of accrual" resulting from his retirement from the uniformed service would be put into effect for the biweekly pay period following the member's retirement from the uniformed service.

Even if section 6303(c) does not itself authorize an agency to *reduce* the leave-accrual rate of an employee, but instead permits an agency only to *increase* an employee's leave-accrual rate when he has completed additional years of creditable service, nothing in section 6303(c) indicates that it is the exclusive means by which an agency may adjust an employee's leave-accrual rate. Certainly, section 6303(c) does not negate an agency's authority to carry into effect the clear command in section 6303(a) that only certain retired members of the uniformed services are entitled to credit for prior active military service following retirement. Section 6303(c)'s explicit direction with respect to increasing an employee's leave-accrual rate does not, under the circumstances, support the inference that Congress implicitly prohibited a *reduction* in an employee's leave-accrual rate. Congress knew how to prohibit an agency from reducing the creditable service of a civilian employee after his appointment date, yet it did so only for certain types of service that otherwise would not be creditable under section 6303(a). *See* 5 U.S.C. § 6303(e)(2)(B) (once an agency, acting pursuant to regulations promulgated under section 6303(e)(1), gives employee credit for years of service which would not otherwise be creditable under section 6303(a), such service "shall not thereafter cease to be so creditable, unless the employee fails to complete a full year of continuous service with the agency"). The omission of similar language here is telling. *See Russello v. United States*, 464 U.S. 16, 23 (1983) ("Where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts

intentionally and purposely in the disparate inclusion or exclusion.") (internal quotation omitted).

Moreover, we understand that OPM, in other contexts, has instructed agencies to adjust an employee's leave-accrual rate even where section 6303 provides no express authority to make such an adjustment. For example, following the reasoning in decisions of the Comptroller General, OPM has instructed federal agencies to readjust the leave-accrual rate of an employee appointed to a civilian position while on the Temporary Disability Retired List ("TDRL"). *See* OPM Manual ch. 6, subch. 2, 2-2(d); *In re Cejka*, 63 Comp. Gen. 210, 213 (1984).

The Comptroller General's decision in *Cejka* supports the conclusion that an agency must carry into effect the clear command of section 6303(a) that a retired service member is no longer entitled to credit for his years of active military service. In *Cejka*, the Comptroller General concluded that an employee who was appointed to a civilian position while on the TDRL was not entitled to be credited for his years of active military service "so long as his name is carried on that [TDRL] list." *Id.* at 213. The Comptroller General stated that "the basis for crediting annual leave at one of the rates specified in [5 U.S.C. § 6303](a)(1)–(3), is predicated on the employee's accumulation of the specified number of years of creditable service," and "[t]he rate to be applied to 'each full biweekly pay period' is determined at the beginning of each upcoming biweekly pay period." *Id.* at 213–14. So long as Cejka was on the TDRL, he was "only entitled to" credit for his active military service effective as of "the date of removal of his name from that list." *Id.* at 213. During "any biweekly pay period of Federal employment while [Cejka] is in a military retired status . . . he may not be credited with his military service time," because as a member on the TDRL, he was entitled to credit for his years of active military service under section 6303(a) only if he could satisfy one of the exceptions in section 6303(a)(A)–(C). *Id.* Cejka did not satisfy any of those exceptions. Therefore, the Comptroller General concluded that section 6303(a) required that Cejka's annual leave accrual rate be adjusted and that "annual leave credited to his account . . . in excess of th[e] rate [to which he is entitled], is to be subtracted from his leave balance." *Id.* The reasoning of *Cejka*, which we find persuasive, *see supra* note 3, indicates that recalculation of an employee's leave-accrual rate is warranted where an employee moves between a creditable and a non-creditable military status.

We are not persuaded that the only relevant time for considering whether a person is retired for the purposes of section 6303(a) is the time of appointment. The plain language of section 6303 establishes that leave-accrual rate determinations may be made *after* the time of appointment, such as when the employee completes additional years of service. 5 U.S.C. § 6303(a), (c). OPM's practice following *Cejka*, as evidenced in its decisions and in the former OPM Manual, *see supra* note 5, likewise demonstrates that leave-accrual rate determinations may be reevaluated after an employee's initial appointment.

## IV.

For the foregoing reasons, we conclude that, for appointments made before the effective date of section 1101 of the Warner Act, a member of a uniformed service appointed to a civilian position while on terminal leave is entitled under section 6303(a) to credit for his years of active military service in determining the rate at which he accrues annual leave, but only while he continues on active duty. Once the member retires from the uniformed service, he is entitled to credit for his years of active military service on the same basis as any other retired member, namely only if he satisfies one of the exceptions in section 6303(a)(A)–(C) or receives credit from the head of the appointing agency pursuant to section 6303(e).[7]

JOHN P. ELWOOD
*Deputy Assistant Attorney General*
*Office of Legal Counsel*

---

[7] We do not address the separate issue of agencies' discretion to waive the recovery of annual leave erroneously granted to employees as an "erroneous payment of pay . . . the collection of which would be against equity and good conscience and not in the best interests of the United States." 5 U.S.C. § 5584(a) (2000); *id.* § 5584(a)(2) (granting authority to head of agency to waive recovery of erroneous payment of up to $1,500); Office of Management & Budget, *Determination with Respect to Transfer of Functions Pursuant to Public Law 104-316* (Dec. 17, 1996) (delegating to agency heads authority under 5 U.S.C. § 5584(a)(1) to waive recovery of erroneous payment of more than $1,500).